FILED

2010 Feb-16  PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| REGINALD W. GILBERT | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: CV-08-P-02405 |
| | ) | |
| WAL-MART STORES, INC. | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF MICHAEL CHANDLER

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF JEFFERSON | ) |

1.      My name is Michael Chandler.  I am the Store Manager for the Walmart Neighborhood Market ("the Neighborhood Market"), Store #4580 in Vestavia Hills, AL.  As the Store Manager, I am responsible for the management and all operations at the Neighborhood Market.  I am above the age of nineteen (19) and have personal knowledge of the facts set forth in this declaration.

2.      I was the Store Manager in 2007 when Reginald Gilbert was transferred to the Neighborhood Market, which was getting ready to open.  While at the Neighborhood Market, Mr. Gilbert was made an Overnight Support Manager, which is an hourly supervisory position.

3.      In December 2007, a fellow Overnight Support Manager, Eric Olsen, utilized Walmart's Open Door Policy to report that Mr. Gilbert used a racial slur when speaking to subordinate Associates about him.  The alleged slur Mr. Gilbert used was "f***ing white boy."

4.      Walmart's Open Door Policy encourages Associates to report violations of Walmart policies to a salaried member of management.  As an

alternative, Associates may call the Walmart Ethics Helpline to raise their concerns.

5.      The use of racially derogatory language is a violation of Walmart's Discrimination and Harassment Prevention Policy, (PD-19) (Exhibit A).  The PD-19 policy prohibits harassment based on an individual's status.  Violations of this policy include, but are not limited to (1) the use of negative stereotyping; and (2) any other conduct that shows hostility toward, disrespect for, or degradation of an individual based on the individual's status.  Walmart's PD-19 policy also requires that if an Hourly Associate, Job Applicant or Third Party experiences or observes a violation of PD-19, he should immediately report the violation to a Salaried Member of Management or use the Ethics Helpline.

6.      Mr. Olsen's allegation that Mr. Gilbert used a racial slur necessitated an investigation of the complaint with the procedures set forth in the Management Guidelines for the PD-19 policy and The Red Book.

7.      As the Store Manager, I conducted the investigation of Mr. Olsen's complaint.  The investigation spanned several months because all of the witnesses worked the overnight shift and it was difficult to schedule an interview in the early morning hours at the end of their shifts and also because of the number of Associates I had to interview.

8.      In compliance with the Management Guidelines for the PD-19 policy, I conducted interviews with Mr. Olsen, Mr. Gilbert, and six (6) other Associates: Yuri Boswell, Dwayne White, Danielle McCaskey, Rita Raines, Kenneth Chestnut, and Ronnie Hunter. These six Associates were identified as witnesses with information about the complaint against Mr. Gilbert, and all are African-American.

9.      Mr. Gilbert categorically denied making the statement alleged.  The Associates corroborated it, however.  I credited Mr. Olsen and the statements of the other six Associates over the denial by Mr. Gilbert.  I concluded that Mr. Gilbert did, in fact, refer to fellow supervisor Mr. Olsen using racially offensive language in the presence of subordinate Associates.

10.      Walmart's Coaching for Improvement Policy (PD-30) is comprised of three levels of Coaching:  Verbal, Written and Decision-Making Day.  A particular performance or policy issue may result in a Coaching at the next level step in the process, or it may result in a higher Coaching step depending upon the nature of

the violation.  After one year, a Coaching is no longer active in an Associate's file. (Exhibit B).

11.     After substantiating the claim against Mr. Gilbert, it was decided that Mr. Gilbert's of violation of PD-19 necessitated a Step Three, or Decision-Making Day Coaching.

12.     I discussed both the Decision-Making Day and appropriate disciplinary options with Market Human Resources Manager Gery Fuller, who in turn discussed the options with Market Manager, Britt Wood.  The final decision, taking into account Mr. Gilbert's ten (10) year employment history with Walmart, was that a demotion and transfer to another Walmart location was the appropriate discipline.

13.     Together, Gery Fuller and I conducted Mr. Gilbert's Decision-Making Day Coaching and informed him of management's decision to demote and relocate him.

14.     After Mr. Gilbert's demotion from Overnight Support Manager, he was moved temporarily to assist with a remodel job at Calera, then eventually transferred to the Alabaster Supercenter, where he remains employed today.

15.     In 2008, the Neighborhood Market restructured its management team. A Salaried Manager, Ms. Elizabeth Amerson, was transferred from another store, and I assigned her Mr. Gilbert's Overnight Support Manager duties.  Ms. Amerson is African-American.

16.     At one point Mr. Gilbert had used the Open Door Policy to complain that Mr. Olsen had used profanity when addressing African-American Associates, and also that he had attendance issues, but that he had never disciplined for either violation.

17.     After Mr. Gilbert's complaint, I conducted an investigation.  No Associates claimed to have ever heard it, so I determined that Mr. Gilbert's accusations regarding Mr. Olsen's use of profanity could not be substantiated. As to attendance issues, I had participated in giving Mr. Olsen a Written Coaching for violation of the Attendance and Punctuality Policy. (Exhibit C).  Therefore, I discredited this allegation.

18.    Mr. Gilbert was not treated any differently, nor disciplined more harshly, than any of the other Associate employed at the Neighborhood Market. He was demoted for violating Walmart's Discrimination and Harassment Prevention Policy, and for no other reason.

I declare under penalty of perjury that the foregoing four-page declaration is true and correct and that I have signed below on this 15th day of February, 2010.


Michael Chandler, Store Manager
Neighborhood Market #4580

W0728233.DOC

4

# EXHIBIT A

## Discrimination & Harassment Prevention Policy (PD-19) - National

Updated: July, 22, 2008

This Policy applies to all associates who work for Wal-Mart Stores, Inc., or one of its subsidiary companies, in the United States ("Wal-Mart"), job applicants, Customers, Members, suppliers, and agents of Wal-Mart.

### Policy

We believe in respecting the dignity of every individual. Respectful, professional conduct furthers our mission, promotes productivity, minimizes disputes, and enhances our reputation. Thus, we are committed to providing an environment that is free of discrimination or harassment based on an *individual's status*. Every associate should avoid any conduct that could reasonably be interpreted as discrimination or harassment.

*Individual's status* means an individual's race, color, ancestry, ethnicity, religion, sex, pregnancy, national origin, age, disability, marital status, veteran status, sexual orientation, or any other legally protected status. Individual's status also includes an individual's marriage to or association with someone with any status listed above.

We will not tolerate any form of discrimination or harassment in any aspect of our business. This means that we strictly prohibit any discrimination or harassment, as described below, by or directed at any associate, job applicant, Customer, Member, supplier, or agent of Wal-Mart. This "zero tolerance" Policy applies regardless of whether such conduct rises to the level of unlawful discrimination or harassment.

**CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER**

### Prohibited Conduct

### Discrimination

We prohibit any *discriminatory action* based on an individual's status in all aspects of our business.

*Discriminatory action* includes firing, refusing to hire, denying training, failing to promote, and discriminating in pay or other terms, conditions, or privileges of employment based on an individual's status. It also includes encouraging or assisting anyone to take discriminatory actions.

We prohibit associates from designing, implementing or executing a business process in any manner that discriminates against, singles out or subjects to heightened scrutiny a person based on race, color, ancestry, ethnicity, religion, sex, pregnancy, national origin, age, disability, marital status, veteran status, sexual orientation, or any other legally protected status. For the purposes of this policy, a "business process" includes, but is not limited to:

- Sales and purchase of goods and services
- Customer service
- Verification or acceptance of any form of payment, including checks, money orders and credit cards

*00538
R. Gilbert v. Wal-Mart
Production of Defendant*

- Acceptance of shopping cards, gift cards, gift certificates and coupons
- Refunds, returns and/or exchanges of merchandise
- Handling of and payment for layaway purchases
- Surveillance, investigation or detention of suspected shoplifters
- Use of Electronic Article Surveillance (EAS)

## Harassment

We prohibit harassment based on an individual's status in all aspects of our business.  This conduct includes:

- Using slurs or negative stereotyping;
- Verbal kidding, teasing, or joking;
- Making offensive comments about an individual's status, appearance, or sexual activity;
- Leering or making offensive gestures;
- Circulating or displaying offensive pictures, cartoons, posters, letters, notes, e-mails, invitations, or other materials;
- Using company e-mail or Internet resources to receive, view, or send offensive jokes, pictures, posters, or other similar materials;
- Intimidating acts, such as bullying or threatening based on an individual's status;
- Offensive physical contact such as patting, grabbing, pinching, or intentionally brushing against another's body;
- Physical touching or assault, as well as impeding or blocking movements;
- Repeated unwanted sexual flirtations, advances, or propositions;
- Pressure for sexual activity, including offering employment benefits in exchange for sexual favors or denying employment benefits in response to a refusal to provide sexual favors; or
- Any other conduct that shows hostility toward, disrespect for, or degradation of an individual based on the individual's status.

Harassing conduct, such as that listed above, is prohibited regardless of whether it is welcome or unwelcome, and regardless of whether the individuals involved are of the same or are of a different sex, sexual orientation, race, or other status.

## Retaliation

We prohibit taking negative action against any associate, former associate, job applicant, Customer, Member, supplier, or agent of Wal-Mart for:

- Reporting conduct that may violate this Policy;
- Filing a complaint of discrimination or harassment with a government agency or court;
- Assisting another individual in reporting conduct that may violate this Policy;
- Assisting another individual in filing a complaint of discrimination or harassment with a government agency or court;
- Cooperating in an investigation; or
- Opposing discrimination or harassment.

If you experience, observe, or become aware of any conduct you believe may be retaliatory, you should immediately follow the Reporting Procedures described below.

**Reporting Procedures**

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00539
*R. Gilbert v. Wal-Mart*
*Production of Defendant*

We are committed to preventing discrimination and harassment in all aspects of our business. We will take all reasonable measures to do so. However, if we are not aware that discrimination or harassment is taking place, we cannot address the situation. Therefore, the following procedures must be followed:

**CONFIDENTIAL**
**PRODUCED PURSUANT TO**
**PROTECTIVE ORDER**

**When you experience conduct that may violate this Policy:**

**Managers, Hourly Associates, Job Applicants, and Third Parties**

If you experience any conduct that may violate this Policy, you should immediately report the violation in one of two ways:

- You may report the violation to any Salaried Member of Management; or
- You may report the violation confidentially and/or anonymously to the Wal-Mart Ethics Helpline, 1-800-WMETHIC (1-800-963-8442).

**When you observe or become aware of any conduct that may violate this Policy:**

**Hourly Associates, Job Applicants and Third Parties**

If you believe a Salaried Member of Management may be violating this Policy, you are not required to report the violation to that person. You may report the possible violation to another Salaried Member of Management or call the Ethics Helpline.

**Managers**

If you observe, receive a report, or otherwise become aware of a possible violation of this Policy, you must immediately report such conduct to the appropriate level of management for investigation.

(Appropriate level of management includes, but is not limited to, the Field Logistics Human Resources Manager, Employment Advisor, Market Human Resources Manager, Regional Human Resources Manager, or People Director). A Salaried Member of Management who fails to report a violation of this Policy may be subject to discipline, up to and including termination.

We will take appropriate steps to ensure that there is no retaliation of any kind for using the Reporting Procedures described in this Policy. Retaliation of any kind for using the Reporting Procedures is strictly forbidden and violates this Policy.

**Investigation and Appropriate Action**

We will take any reported violation of this Policy seriously. We will promptly and thoroughly investigate any report of a possible violation of this Policy in accordance with the procedures set forth in the Management Guidelines for this Policy and THE RED BOOK.

You must cooperate with and tell the truth to the individual who investigates your report. If you do not cooperate or you fail to tell the truth, we will be unable to conduct a proper investigation or take prompt remedial action. Any associate who refuses to cooperate in an investigation or fails to tell the truth during an investigation may be subject to discipline, up to and including termination.

*00540*
*R. Gilbert v. Wal-Mart*
*Production of Defendant*

We will take appropriate action to eliminate conduct that violates this Policy and to ensure that there is no recurrence of such conduct. We may put reasonable interim measures in place during an investigation of a reported Policy violation. Interim measures may include, but are not limited to, a leave of absence, suspension, or transfer of the associate who reportedly violated this Policy.

We will take further appropriate action once the reported violation has been thoroughly investigated. If an investigation reveals that an associate has violated this Policy (or any other Policy), we will take corrective action regarding that associate, including coaching and/or other discipline, up to and including termination.

**Confidentiality**

We will make every reasonable effort to maintain the confidentiality of all parties involved in any investigation. We will disclose information to only those having a need to know in order to facilitate the investigation or resolution. Any disclosure of information, other than on a need-to-know basis as described above, will constitute a breach of confidentiality and will result in discipline, up to and including termination.

**Contact Person(s)**

For guidance, contact:

| Facility | Contact |
|---|---|
| Wal-Mart Stores: | Store Manager<br>Regional Human Resources Director |
| Sam's Clubs: | Club Manager<br>Regional Human Resources Director |
| Field Logistics: | Field Logistics People Manager<br>Regional Human Resources Manager |
| Home Office: | People Manager<br>People Director |

Last Updated: July 22, 2008

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00541
R. Gilbert v. Wal-Mart
Production of Defendant

# EXHIBIT B

| | |
|---|---|
| **Wal-Mart® Corporate Policy** ———— Number: PD-30 Revised: 04/18/05 | **Coaching for Improvement** **Type: Division 01 and 18 Field Only** **Coaching for Success** Coaching for Success can be defined as an informal, ongoing process of helping Associates achieve results by building on Associates' strengths, developing their skills, providing encouragement and increasing their confidence. In other words, it means increasing the likelihood of the Associate's personal success and enhancing their ability to contribute significantly to the team's success. |

Coaching for Success is an essential part of leadership - spending time with Associates where the work is done, being available to instruct, listen and advise. It provides Associates with a constant flow of feedback. In this manner, help is provided when it is needed most as well as communicating enthusiasm, pride, and support. Coaching for Success often resolves or solves a situation before it gets to the point of Coaching for Improvement.

**Coaching for Improvement**

Coaching for Improvement occurs when an Associate's behavior (job performance or misconduct) fails to meet the Company's expectations, even after Coaching for Success. It is a more formal process designed to encourage and assist an Associate to improve their job performance or behavior to meet the Company's expectations. It allows the Associate to be involved in their own improvement plans and assume responsibility for their behavior. Our aim is to retain Associates who have the interest, ability, and desire to be successful.

**CONFIDENTIAL**
**PRODUCED PURSUANT TO**
**PROTECTIVE ORDER**

**Applies To**

- All Associates regular, full time, peak time, Hourly and Salaried.
- Special considerations apply to Associates Employed Less Than 90 Days and Home Office Temporary Associates. See Associates Employed Less Than 90 Days and Home Office Temporary Associates section.

**The Coaching for Improvement Process**

Coaching for Improvement is designed to be progressive. Apply Coaching for Improvement in a fair, timely, and consistent manner. Always start at the appropriate Coaching Level depending on the classification of behavior to be addressed. More serious levels of coaching are used at appropriate intervals until either the Associate's conduct or performance reaches the desired improvement or all coaching levels have been exhausted. However, there will be some situations where use of the Coaching process is not warranted and instead, the Associate's employment is automatically terminated. (See Gross Misconduct section below.)

Coachings should be conducted in a manner which allows the Associate to explain

00567
*R. Gilbert v. Wal-Mart*
*Production of Defendant*

their behavior and to learn from the discussion.

Investigations are a routine part of the coaching process. It ensures a complete review of the facts and allows time for proper consideration of appropriate disciplinary action. During the investigation, the Associate may be suspended without pay if it is in the best interest of all parties involved.

Salaried Members of Management suspended without pay must receive their salary through the end of their current pay week.

Refer to the Investigation and Suspension Policy (PD-57) for additional information.

## Guidelines for Administering the Coaching for Improvement Process

1. Gather the facts including witness statements, if appropriate.
2. Discuss the situation with the Associate to get their side and any additional facts. Gather Associate(s) statement, if applicable.
3. Properly classify whether the action is related to job performance or a specific behavior (misconduct or gross misconduct), including a specific reference to any policy or procedure including Health Privacy and Security Standards.
4. Determine the appropriate level of coaching. Depending upon the behavior, steps may be skipped.
5. Complete the Coaching for Improvement in the System.
6. Follow the procedures for effective coaching (set climate, etc.).
7. Conduct the Coaching for Improvement session, along with an hourly supervisor or another salaried member of management present, if the facts and the initial discussion with the Associate conclude a coaching is appropriate.
8. The Associate must complete the Plan of Action Section for both the Written and Decision-Making Day level of Coaching for Improvement.

## Coaching for Improvement Levels

Level One - Verbal Coaching
Verbal Coaching is used to notify an Associate that their conduct or performance does not meet Wal-Mart's stated expectations, and what they need to do to correct the situation. It is always done verbally and in a constructive, non-intimidating way.

- Advise the Associate that this is the first level of our Coaching for Improvement process.
- The Supervisor should document the time, place and content of this conversation in the Coaching for Improvement System in the Behavior Observed Section.
- The Associate is not required to acknowledge the coaching.
- The Hourly Supervisor and salaried member of management should enter the Coaching into the system and then acknowledge the Verbal Coaching once it has been conducted.

Level Two - Written Coaching

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

*00568*
*R. Gilbert v. Wal-Mart*
*Production of Defendant*

The Written Coaching is a more serious discussion than a Verbal Coaching. It is the first level of Coaching for Improvement, which requires the Associate's acknowledgement.

- The Coaching for Improvement, with an acceptable detailed action plan, should be completed and acknowledged by the Associate.

Level Three - Decision-Making Day
This is the final opportunity for an Associate to evaluate their behavior in view of Wal-Mart's expectations prior to Termination.

- Level Three must also be formally documented and should be acknowledged by the Associate.
- Clearly explain the deficiencies noted at earlier Coaching for Improvement Levels, if any, and the specific improvement required.
- The Associate should complete an acceptable detailed action plan.

Decision-Making Day

- After conducting the Level Three session, the Associate is given one (1) day off with pay to decide whether they will make the required improvement. The Decision-Making Day is the Associate's next scheduled workday. The Associate should be paid for the number of hours they were actually scheduled to work. For payroll, designate these hours as "Other Pay - Decision-Making Day".
- Meet with the Associate at the start of the next scheduled work day after the Decision-Making Day to review the Associate's detailed action plan developed during the Decision-Making Day and to discuss their decision as to making the required improvement. The Associate should at this time input their detailed Action Plan into the Coaching for Improvement System.
- An Associate may be given only one (1) Decision-Making Day within a 12 month period. If the Associate has already been given a Decision-Making Day within the preceding 12 month period and their performance or behavior continues to not meet Company expectations, the Associate is subject to immediate termination.

Demotion may be included as part of the coaching process at Level Three - Decision-Making Day for both job performance and misconduct issues. Demotions should always be accompanied by appropriate documentation.

Level Four - Termination
Associates who are deemed to have engaged in Gross Misconduct are subject to immediate termination. This is not part of the Coaching for Improvement process. If the salaried member of management is uncertain if a particular behavior is Gross Misconduct, the District Manager/Director of Operations, Regional Personnel Manager, or the personnel representative for the area should be contacted to discuss the situation before any disciplinary action is taken. For matters pertaining to Health Privacy Standards, you may also call Wal-Mart's HIPAA Privacy Officer at 1-800-421-1362 or 479-621-2929. For matters pertaining to Health Security Standards, e-mail HIPAA EPHI Report at hipaaeph@wal-mart.com.

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00569
R. Gilbert v. Wal-Mart
Production of Defendant

Any level of Coaching for Improvement for a violation of the Health Privacy Standards will be forwarded electronically to the HIPAA Privacy Officer.

**Behavior Classification**

Three behaviors are addressed below by this policy:

- Job Performance.
- Misconduct.
- Gross Misconduct.

Any combination of these behaviors may result in additional disciplinary action up to and including termination.

Job performance includes behavior that does not meet the reasonable expectations/standards set for all Associates in the same or similar position.

Misconduct includes behavior other than job performance, which falls below stated expectations, violates Company policy, does or may interfere with safe, orderly, or efficient operations or which creates a hostile or offensive environment for Associates, Customers/Members, and/or Suppliers, including compliance with Health Privacy and Security Standards.

Examples of misconduct include, but are not limited to:

- Attendance or punctuality that does not meet clearly communicated Company/facility guidelines.
- Unauthorized use of Company time (i.e. loafing) or personal business on Company time.
- Reckless use of equipment.
- Horseplay.
- Harassment/Inappropriate Conduct.
- Profanity
- Understocking merchandise.
- Insubordination.
- Grazing (i.e., eating food items from an open bag, eating items from claims, etc.)
- Inappropriate disclosure of another person's (Associate or Customer/Member) or Company confidential information.
- Unauthorized sale of restricted items (i.e., alcohol, tobacco, pseudo ephedrine, spray paint, R-rated movies, M-rated games, or any other item restricted by Wal-Mart guidelines or law).
- Improper release of prescription medications from the Pharmacy.
- Unauthorized use or disclosure of health information in violation of the Health Privacy and Security Standards Policy. (i.e., An Associate answering the phone in Pharmacy or Optical and releasing information without first verifying the identity of the caller).

Gross Misconduct will not be tolerated. Coaching for Improvement will not be used to address gross misconduct. The employment of an Associate who is deemed to have

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00570
R. Gilbert v. Wal-Mart
Production of Defendant

engaged in gross misconduct is subject to immediate termination. Associates terminated for gross misconduct are not eligible for re-hire. The following list is not all-inclusive but serves as examples of conduct, which are usually classified as gross misconduct and may result in immediate termination:

- Intentional misuse of Company time (claiming pay for time not worked).
- Theft.
- Dishonesty/Compromised integrity.
- Fraud.
- Abuse of Associate discount.
- Falsification of Company records.
- Possession/use of a firearm or other dangerous weapon on Company property.
- Possession/use/consumption of drugs or alcohol on Company property; and/or reporting to work impaired by either substance.
- Serious Harassment/Inappropriate Conduct.
- Fighting/Assault.
- Rude/Abusive conduct toward a Customer/Member or another Associate.
- Under-ringing merchandise or ringing an Associate's own purchase.
- Grazing (i.e., opening packages, purposefully damaging items, removing items from the shelf to eat, or any other act which causes a financial loss to the Company).
- Unauthorized surveillance of any Associate or salaried member of management.
- Negligent sale of restricted items (i.e., alcohol, tobacco, pseudo ephedrine, spray paint, R-rated games or movies, or any other item restricted by Wal-Mart guidelines or law).
- Unauthorized sale of any type of firearm.
- Negligent release of prescription medications from the Pharmacy.
- Violation of certain federal, state, or local criminal statutes.
- Any willful use or disclosure of health information in violation of the Health Privacy and Security Standards (i.e., Associate discloses health information without a business reason to disclose or to harm the reputation of the other person).
- Supervisor or salaried member of management who directed, knew or upon reasonable inquiry should have known that an hourly Associate worked without being properly compensated.

If assistance is needed determining if a particular infraction should be classified as Gross Misconduct, call the District Manager/Director of Operations, Regional Personnel Manager or the personnel representative for the area to discuss prior to termination. For matters pertaining to Health Privacy Standards, you may also call Wal-Mart's HIPAA Privacy Officer at 1-800-421-1362 or 479-621-2929. For matters pertaining to Health Security Standards, e-mail HIPAA EPHI Reports at hipaaeph@wal-mart.com.

## Associates Employed Less Than 90 Days and Home Office Temporary Associates

Associates employed less than 90 Days and Home Office Temporary Associates should be given verbal feedback regarding their performance and behavior. The formal coaching process is preferred, but not required.

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00571
R. Gilbert v. Wal-Mart
Production of Defendant

Issues of performance should be addressed before an Associate is terminated, allowing them an opportunity to meet Company expectations. However, any performance issue may be grounds for termination.

**Refusal to Provide Plan of Action/Acknowledge Expected Behavior**

Associates are required to provide an acceptable written plan of action with both the Written and Decision-Making Day levels of Coaching for Improvement. If the Associate fails to provide the acceptable written plan of action and acknowledge the expected behavior, the salaried member of management who administered the coaching and the next level of management should:

- Restate the problem, why it is a problem, and the expectations.
- Ask the Associate to confirm and restate their understanding.
- Listen to the Associate's response and explanation.
- Explain that if the Associate refuses to write an acceptable plan of action and acknowledge the expected behavior, they will be advanced to the next level of coaching, up to and including termination.

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

**Refusal to Acknowledge a Coaching for Improvement**

If the Associate refuses to acknowledge a Coaching for Improvement, you should:

- Restate the problem, why it is a problem and the expectations.
- Ask the Associate to confirm and restate their understanding.
- Listen to the Associate's response and explanation.
- Explain that acknowledging the coaching is to acknowledge the Coaching for Improvement session was held. The Associate may also include any comments on the coaching, including that they do not agree.
- Always have another salaried member of Management present for the discussion and to acknowledge the completed coaching.

If the Associate refuses to acknowledge the Coaching for Improvement, the next level of supervision should discuss the situation with the Associate who is being coached and also must acknowledge the completed coaching.

**Retention/Active Period**

Coaching for Improvement documentation will be maintained electronically for 12 months under an "active" status. Twelve months after the last Coaching for Improvement session the Coaching for Improvement documentation becomes "inactive". Notify the Associate that due to their improved behavior/performance, the Coaching for Improvement documentation is now "inactive".

"Inactive" coachings will be electronically placed in a separate "Inactive" database which is maintained for five (5) years after the Associate leaves the Company.

All coachings pertaining to Health Privacy Standards must be retained for at least six (6) years by the Company and Wal-Mart's HIPAA Privacy Officer.

00572
R. Gilbert v. Wal-Mart
Production of Defendant

**Leave of Absence**

The active period of a coaching is suspended during a leave of absence. When the Associate returns to work, the "clock" will start to run again.

An Associate was issued a Written Coaching January 4. She took a leave of absence from May 4 until July 4. The active period of the coaching is then extended for the same length of time as her leave. Thus, instead of the coaching expiring January 4 (12 months from the date of issuance), it will expire March 4.

**Resources**

| Forms: | Coaching System: Coaching for Improvement System |
|---|---|
| Guides: | Coaching for Improvement Guide |
| Related Policies: | Investigation and Suspension Policy (PD-57)<br>HIPAA Privacy Policy (PD-59) |
| Personal Contacts: | District Managers/Director of Operations<br>Regional Personnel Managers<br>Corporate Associate Relations<br>HIPAA Privacy Officer<br>Legal Department<br>Information Security Official |

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00573
R. Gilbert v. Wal-Mart
Production of Defendant

# EXHIBIT C

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

## Coaching For Improvement

**Coach # 2949770 ~ Status is Expired ~ Mode is View**

| National ID# (SSN #) | First Name | M.I. | Last Name | Userid | Country | Division | Facility/Dept. |
|---|---|---|---|---|---|---|---|
| *****7903 | ERIC | | OLSEN | EOLSEN | US | 1 | 4580 |

### Type of Coaching:

The Level, Type, and Reason(s) displayed below were the original Level, Type, and Reason(s) selected for the coaching.

| Level | Type | Reason(s) |
|---|---|---|
| Written | Misconduct | Attendance/Punctuality |

### Observations of Associates Behavior and/or Performance:

ON 12-06-07, ERIC CALLED IN SICK FROM WORK. THIS MAKES ERIC S 9TH ABSENSE. WELL OVER THE POLICY STANDARDS.

### Impact of Associate's Behavior:

AS A MEMBER OF MANAGEMENT, WE MUST SET THE EXAMPLE TO ALL POLICIES. WHEN MGNT DOES NOT OBEY THE POLICIES AND REGULATIONS, AFFECTS THE PRODUCTIVITY OF OUR ASSOCIATES AND THE STORE. THESE ACTIONS IN TURN AFFECTS THE MORALE AND THE EFFICIANCY OF OUR ASSOCIATES AND OUR STORE.

### Behavior Expected of Associate:

TO BE AT WORK WHEN SCHEDULED AND ON TIME.

### Next Level of Action:

The next level of action if behavior continues is:    Decision Day up to and including Termination.

### Action Points / Associate's Comments:

I ACKNOWLEDGE MY ATTENDANCE ISSUE AND WILL BE HERE WHEN SCHEDULED.

### Date, Time, and Place of Coaching:

| Date Given | 2007-12-12 | Time | 8:53 AM | Place | MGMT OFFICE |
|---|---|---|---|---|---|

### Expiration Date:

The expiration date of the coaching may be extended beyond 1 year if the Associate spent time on LOA.

| Expiration Date | 2008-12-13 |
|---|---|

### Coaching Acknowledgements Originated By:

| | National Id# (SSN#) | First Name | Last Name | |
|---|---|---|---|---|
| Associate | *****7903 | ERIC | OLSEN | |
| Associate Userid | EOLSEN | | | |
| Manager / Supervisor | | | | |
| Member of Mgmt. | | | | |

### Coaching Acknowledgements Finalized By:

| Completed by Associate >> | ☑ I have completed the Action Points and will exhibit the expected behavior in the future. |
|---|---|

| | National Id# (SSN#) | First Name | Last Name | |
|---|---|---|---|---|

00754
R. Gilbert v. Wal-Mart
Production of Defendant

| Associate | *****7903 | ERIC | OLSEN | ☑ I Acknowledge |
|---|---|---|---|---|
| Associate Userid | EOLSEN | Password Validated | | |
| Manager / Supervisor | *****4026 | MICHAEL | CHANDLER | ☑ I Acknowledge |
| Member of Mgmt. | *****4035 | TINA | RADFORD | ☑ I Acknowledge |

<< Back    Print

CONFIDENTIAL
PRODUCED PURSUANT TO
PROTECTIVE ORDER

00755
R. Gilbert v. Wal-Mart
Production of Defendant