FILED

2010 Jul-30 PM 12:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGINALD W. GILBERT,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:08-CV-2405-RDP** |
| | } | |
| **WAL-MART STORES, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

The court has before it the February 16, 2010 motion (Doc. # 20) of Defendant Walmart Stores, Inc. (hereinafter "Walmart" or "Defendant") for summary judgment. Pursuant to the court's orders of April 28, 2009 (Doc. #9), October 13, 2009 (Doc. #14), December 8, 2009 (Doc. #18), March 5, 2010 (Doc. #24), and March 23, 2010 (Doc. #26), the motion for summary judgment is now under submission and is considered herein without oral argument.

Having considered the briefs and evidentiary submissions, the court finds that Walmart's motion for summary judgment is due to be granted for the reasons outlined below.

## I.    <u>Procedural History</u>

Plaintiff Reginald W. Gilbert commenced this action on December 23, 2008 by filing a single count complaint (Doc. # 1) in this court, alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. Specifically, Plaintiff asserts that Wal-Mart subjected him to disparate treatment in the form of disparate discipline based on his race.

Defendant's February 16, 2010 Motion (Doc. #20) for Summary Judgment argues that no genuine issue of material fact exists and that Walmart is entitled to judgment as a matter of law as to the claim asserted against it.

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment. On February 16, 2010, Walmart submitted evidence[1] (Doc. #22, Exhs. A, B) in support of the motion and also filed a supporting memorandum brief (Doc. #21). Plaintiff submitted evidence[2] (Doc. #28, Exhs. 1-7) in opposition to the motion for summary judgment on March 26, 2010 and on the same date filed an opposing brief (Doc. #27). Finally, on April 8, 2010, Walmart filed a reply (Doc. #29) to Plaintiff's response in opposition to Defendant's motion for summary judgment.

## II.   Legal Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his

---

[1] Defendant Wal-Mart submitted: the deposition transcript of Reginald Gilbert, with exhibits (Exhibit A) and the declaration of Michael Chandler, with exhibits (Exhibit B).

[2] In opposition to the motion, Plaintiff submitted: the declaration of Reginald Gilbert (Exhibit 1); Coaching for Improvement Policy (Exhibit 2); Open Door Communications Policy (Exhibit 3); September 17, 2007 Investigative Notes (Exhibit 4); January 10, 2008 Investigative Notes (Exhibit 5); the deposition of Gery Fuller (Exhibit 6); and the deposition of Carolyn Cecil (Exhibit 7).

burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge his initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, he can satisfy his initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to

prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving

party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can

satisfy its initial burden on summary judgment is to *affirmatively* show the absence of evidence in

the record to support a judgment for the non-moving party on the issue in question.  This method

requires more than a simple statement that the non-moving party cannot meet its burden at trial but

does not require evidence negating the non-movant's claim; it simply requires that the movant point

out to the district court that there is an absence of evidence to support the non-moving party's case.

*See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets his initial burden by using this second

method, the non-moving party may either point out to the court record evidence, overlooked or

ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on

the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest

on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343,

358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  The court is aware that

the summary judgment rule applies in job discrimination cases just as in other cases.  *Chapman v.

AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (rejecting an earlier, contrary general rule and

emphasizing that no thumb is to be placed on either side of the scale).

III.   <u>**Relevant Undisputed Facts**</u>[3]

A.   **Timeline of Plaintiff's Employment with Walmart**

Plaintiff Reginald Gilbert was hired by Walmart on May 5, 1998 as a stocker in the frozen food department of the Homewood, Alabama store, # 1481.  (Doc. #21 at 3, ¶ 1; Doc. #27 at 2, ¶ 1). At the time of his hire, he received a copy of Walmart's Associate Handbook, which contains Walmart's employment policies and procedures.  (Doc. #31 at 3, ¶ 2; Doc. #27 at 2, ¶ 2).

In 2001 or 2002, Gilbert, at his request, was transferred to the Walmart store in Calera, Alabama, #3271, and assumed the position of Frozen Foods Department Manager.  (Doc. #21 at 3, ¶ 3; Doc. #27 at 2, ¶ 3).  While in the position of Frozen Food Manager, Gilbert was asked by District Manager Britt Wood to train frozen food associates at the new Palisades Neighborhood Market.  (*See* Gilbert Dep. at 86-87).  After successful completion of that task, District Manager Wood recommended Gilbert for promotion to Overnight Support Manager at the new store in Vestavia, Alabama, #4580.  (Doc. #21 at 3, ¶ 4; Doc. #27 at 2, ¶ 4; *see also* Gilbert Dep. at 87). Thereafter, Gilbert assumed the position of Overnight Support Manager.

On February 19, 2008, Gilbert was demoted.  (Doc. #21 at 4, ¶ 5; Doc. #27 at 3, ¶ 5).  After the demotion, Gilbert worked until May 2008 on a remodel project at the Calera Superstore, #3271. (Doc. #31 at 4, ¶ 6; Doc. #27 at 3, ¶ 6).  When the remodel ended, Gilbert was assigned to the Alabaster Supercenter, #423, as overnight maintenance associate.  (Doc. #21 at 4, ¶ 7; Doc. #27 at 3-4, ¶ 6).  Gilbert's responsibilities as overnight maintenance associate include sweeping floors, mopping floors, and cleaning the restrooms.  (Gilbert Decl. at ¶¶ 9-10).  While Gilbert's rate of pay

---

[3] If the facts are in dispute, they are stated in the manner most favorable to the Plaintiff. *Fitzpatrick*, 2 F.3d at 1115.

was unchanged by the demotion, the amount of money he earns has decreased by approximately $12,000 because of minimal opportunities for overtime.  (Gilbert Dep. at 90; Gilbert Decl. at ¶ 6). It is this demotion that is the subject of this lawsuit.

**B.      Walmart's Anti-Discrimination Policies**

Walmart's Discrimination and Harassment Prevention Policy ("PD-19") provides in part: "[Walmart] prohibit[s] harassment based on an *individual's status* in all aspects of our business." Violations of the policy include, but are not limited to: (1) using slurs or negative stereotyping; and (2) any other conduct that shows hostility toward, disrespect for, or degradation of an individual based on the individual's status.  (Doc. #21 at 4, ¶ 8; Doc. #27 at 4, ¶ 8).  PD-19 further provides that if an Hourly Associate, Job Applicant, or Third Party experiences, observes, or becomes aware of any conduct that may violate the policy, they should immediately report the violation in one of two ways: (1) report the violation to any salaried member of management; or (2) report the violation confidentially and/or anonymously to the Walmart Ethics Hotline.  (Doc. #21 at 4-5, ¶ 9; Doc. #27 at 4, ¶ 9).  Once an alleged violation of PD-19 has been reported, Walmart's policy is to promptly and thoroughly investigate the complaint in accordance with the Procedures set forth in the Management Guidelines for the PD-19 Policy and THE RED BOOK.  (Doc. #21 at 5, ¶ 10; Doc. #27 at 4, ¶ 10).  The investigation consists of interviews with the complaining party, the alleged offender, and other Associates who may have information regarding the alleged violation.  (Doc. #21 at 5, ¶ 11; Doc. #27 at 4, ¶ 11).  If an investigation determines that an associate has violated the PD-19 policy, Walmart will discipline the associate according to the discipline policy.  (Doc. #21 at 5, ¶ 12; Doc. #27 at 4, ¶ 12).

Walmart's Coaching for Improvement Policy ("PD-30"), which applies to all associates and salaried employees, includes three levels of coaching: Verbal, Written, and Decision-Making Day. (Doc. #21 at 5, ¶ 13; Doc. #27 at 4, ¶ 13; Doc. #29 at 1, ¶ 1). A particular performance or policy issue, such as job performance, misconduct, or gross misconduct,[4] may result in a Coaching at the next step in the process, or it may result in a higher Coaching step depending on the nature of the violation. (Doc. #21 at 5-6, ¶ 13; Doc. #27 at 4, ¶ 13; Exh. B to Chandler Decl.). Under the policy, a Coaching is active in the associate's file for one year. (Doc. #21 at 6, ¶ 14; Doc. #27 at 4, ¶ 14). The final level of Coaching, a Decision-Making Day, is a one-day paid suspension to allow the associate time to reevaluate his commitment to his employment at Walmart and to pursue a "plan of action" for improving the deficient performance. (Doc. #21 at 6, ¶ 15; Doc. #27 at 4, ¶ 15). Since around 2003, the Associate Handbook, as well as all employment policies, have been disseminated through Walmart's intranet system, "The WIRE." (Doc. #21 at 6, ¶ 16; Doc. #27 at 4, ¶ 16).

### C.    Gilbert's Job Performance and Disciplines

When his performance as an associate was appraised in May 1999, Gilbert was credited for working hard and being honest, and received an overall evaluation of "meets expectations," but was informed that he needed to "improve on the ways in which he deals with problems and co-workers" and improve "his communication with this fellow associates" and to "be careful not to antagonize another."  (Def. Exh. 2 to Gilbert Dep.).  Gilbert's annual review in March 2002 rated him as "exceeds expectations" and praised him for his performance, but stressed that he "needs to improve on personal issues with other associates in the store."  (Def. Exh. 3 to Gilbert Dep.).

---

[4] An associate who engages in gross misconduct is "subject to immediate termination." (Exh. B to Chandler Decl.).

On September 17, 2007, Gilbert received a Verbal Coaching for his job performance; specifically, he was told that he needed to improve his supervision and leadership skills. (Def. Exh. 11 to Gilbert Dep.). On February 2, 2008, Gilbert received a Written Coaching for job performance for failing to: (1) stock all of the freight on one of his shifts; (2) properly zone the store; and (3) adequately staff and prioritize the work performed. (Def. Exh. 12 to Gilbert Dep.).

On February 19, 2008, Gilbert was given a Level Three Coaching, Decision-Making Day Coaching[5] for inappropriate conduct, specifically, for using the phrase "f***ing white boy" in reference to a fellow supervisor, Support Manager Eric Olsen.[6] (Def. Exhs. 7, 10 to Gilbert Dep.).

---

[5] Gilbert received a Level Three - Decision Making Coaching at this point because he had received a Step One (verbal) and a Step Two (written), within the preceding 12 months due to job performance issues. (Doc. #29 at 3, n. 3).

[6] The relationship of Gilbert and Olsen was strained. Plaintiff testified:

> The – there was an issue of two black associates. One's name was Ramone and the other one's name was Quincy. And they came to me trying to use the open door policy on a complaint they had against Eric [Olsen], which they said that Eric used profanity to them on the sales floor and they didn't appreciate it. So, they wanted to make a complaint about it.
>
> So, I asked them what happened. They said Eric [Olsen] walked up to them and said, look, you guys – I've been watching you guys standing here bullshitting around for the last 30 minutes. You need to get this shit done, you know, like that.
>
> So, they came and told me . . . I said, but this is an issue that you have to take up with Kirk.
>
> . . .
>
> I said, write the statement and give me – give me the statement, I'll give it to Kirk.
>
> So, when I gave – I gave the statement to Kirk and who – I think I gave it to Kirk. I gave it to a member of management. I think it was Kirk, though, I'm

8

The statement, which Gilbert "categorically" denies making, was reportedly not made directly to Olsen, but was overheard by Olsen and other associates.  (Def. Exh. 7 to Gilbert Dep.; *see also* Gilbert Decl. at ¶ 8).  The Decision-Making Day Coaching followed an investigation, initiated by Store Manager Michael Chandler, Market Human Resources Manager Gery Fuller,[7] and Market Manager Britt Wood, and proceeded pursuant to the Management Guidelines of PD-19 and THE RED BOOK.  (Doc. #21 at 7, ¶ 23; Doc. #27 at 5, ¶ 23; Doc. #29 at 5, ¶ 10).  Chandler conducted interviews of associates, many of whom were African-American, and determined that Gilbert had in fact made the racially derogatory and profane statement, and had on other occasions referred to Olsen in a racially derogatory manner.  (Doc. #21 at 7-8, ¶ 24; Doc. #27 at 5, ¶ 23).  The conduct was classified on the Coaching for Improvement Detail as "Inappropriate Conduct" which appears under the PD-30 policy as both "misconduct" and "gross misconduct."  (Def. Exh. 7 to Gilbert Dep.).

---

not sure.

But anyway – anyway, they talked to Eric about the situation and told Eric that I brought the statement in.  Eric came right out of that meeting, walked out to the sales floor, walked up to me and said, man, what – you know, what kind of bullshit is this?  You know what I'm saying?  You took a statement in against me, man?

(Gilbert Dep. at 111-113).

Walmart investigated the Open Door complaints about Olsen and concluded that Olsen should not receive discipline for the incident.  (Doc. #27 at 8, ¶ 8; Doc. #29 at 4, ¶ 8).  Because Gilbert himself had not lodged the complaint, he was not contacted after the investigation was complete.  (Doc. #27 at 8, ¶ 8; Doc. #29 at 4, ¶ 8).

[7] Fuller investigated another PD-19 incident in which Walmart Manager Carolyn Cecil, a white female, allegedly referred to another associate as "white trash."  (Fuller Dep. at 40-41).  At the conclusion of that investigation, Fuller decided that Cecil's conduct violated Walmart's PD-19 policy and she received a Step 2 Coaching for Improvement.  (Fuller Dep. at 43-44; Cecil Dep. at 80).

In connection with the Decision-Making Day Coaching, Chandler, Fuller, and Wood made the collective decision to demote Gilbert from his Overnight Support Manager position.  (Gilbert Dep. at 171; Doc. #29 at 5, ¶ 10).  Following the demotion, Walmart restructured the store that Gilbert had been working at when he was demoted.  (Gilbert Dep. at 197-198).  Gilbert testified that he was told that a white female replaced him, but in reality, the Rule 56 evidence shows that Gilbert's duties were assumed by a salaried manager, Elizabeth Amerson, who is a long-time Walmart associate and African American.  (Gilbert Dep. at 197-199).

### D.    Gilbert's EEOC Charge

In March 2008, Gilbert filed a charge of discrimination, no. 420-2008-01832, with the Equal Employment Opportunity Commission ("EEOC"), alleging that his demotion was the result of race discrimination.[8]  (Def. Exh. 14 to Gilbert Dep.).  On September 25, 2008, the EEOC issued a Dismissal and Notice of Right to Sue on that charge.  (Doc. #21 at 8, ¶ 29; Doc. #27 at 6, ¶ 29).  This lawsuit followed.

## IV.    Applicable Substantive Law and Discussion

### A.    Framework of Disparate Treatment Race Discrimination Claims under Title VII and 42 U.S.C. § 1981[9]

 Gilbert does not claim to have direct evidence in this case, and so his case must proceed on the theory of circumstantial evidence of discrimination.  Under the *McDonnell Douglas* and *Burdine*

---

[8] Gilbert had filed two previous EEOC charges against Walmart.  The first, filed in 2000, charge no. 130A00914, alleged sexual discrimination.  (Def. Exh. 15 to Gilbert Dep.).  The second, filed in 2002, charge no. 130A202187, alleged retaliation on the basis of being denied a promotion. (Def. Exh. 16 to Gilbert Dep.).  No lawsuit was ever filed pursuant to those charges (Gilbert Dep. at 202-203, 204-206) and they are not material here.

[9] The Eleventh Circuit applies the same analytical framework to Title VII and § 1981 race discrimination claims.  *See Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004).

framework applicable to such claims, the plaintiff has the initial burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation. *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.*, 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly. *McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); *see also Nix*, 738 F.2d at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Combs*, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254-55; *see Chapman*, 229 F.3d at 1024. If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination is dispersed and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. When

the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons. *Chapman*, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. *Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may defeat summary judgment by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *Reeves v. Sanderson Plumbing Prods. Inc.*, 120 S. Ct. 2097, 2108-09 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

Gilbert's testimony and complaint reveal that he believes he was subjected to disparate treatment on the basis of his race on one occasion – when he was demoted for using racially derogatory and profane language toward another employee.  (*See generally* Compl.; Doc. #27 at 10-17).  That contention is explored herein.

### B.    Plaintiff has Failed to Establish a Prima Facie Case of Race Discrimination

The parties agree on the elements required to establish a prima facie case of disparate treatment race discrimination.[10]  (Doc. #21 at 10; Doc. #27 at 12-13).  Gilbert must show that: (1)

---

[10] Neither party mentions, although it is the law in the Eleventh Circuit, that another way for a plaintiff in a disparate treatment work rule case to establish the prima facie case is to show that he did not violate the work rule.  *See Gerwens*, 874 F.2d at 1539; *see also Marshall v. Mayor and Alderman of City of Savannah, Ga.*, Slip Copy, 2010 WL 537852, No. 09-13444 at *5 (11th Cir. Feb. 17, 2010).  The court need not determine the validity of such an assertion here for two reasons.  First, Plaintiff did not raise it as a method for proving his prima facie case.  *See Smith v. Sunbelt Rentals, Inc.*, 356 Fed. Appx. 272, 278 (11th Cir. 2009) (finding that because the plaintiff raised his argument that he did not violate the work rule *only* with regard to pretext and not with regard to the prima facie case, the district court correctly only considered comparator evidence).  Second, Walmart has articulated a legitimate, non-discriminatory reason for demoting Gilbert – its investigation concluded that he used profanity.  The law is clear that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.  *See Chaney v. Southern Railway Co.*, 847 F.2d 718, 723-24 (11th Cir.1988) (focusing disparate treatment inquiry on whether employer had "reason to believe" employee was trying to cover up on-duty marijuana use); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1186 (11th Cir.1984) (" '[I]f an employer applies a rule differently to people it believes are differently situated, no discriminatory intent has been shown' ") (quoting *Chescheir v. Liberty Mutual Insurance Co.*, 713 F.2d 1142, 1148 (5th Cir.1983)); *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1256 (5th Cir.1977) ("Even if [employer] wrongly believed that [Title VII claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination"); *see also* discussion *infra* Section IV.C. on pretext.

Similarly, neither party mentions the prima facie test for discriminatory demotion from *Sturniolo v. Sheaffer, Eaton, Inc.*, which requires the plaintiff to demonstrate: (1) he is a member of a protected class; (2) he was qualified for the job; (3) he was demoted; and (4) following the demotion he was replaced by someone outside his protected class. 15 F.3d 1023, 1025 (11th Cir.1994); *see also Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir.2000) (applying same standard in case involving teacher claiming discriminatory demotion). However, in *Sturniolo* and *Hinson*, the demotions were unrelated to any claimed discipline or

he is a member of a protected class; (2) he was subjected to an adverse employment decision; (3) his employer treated similarly situated white employees more favorably; and (4) he was qualified to do his job. *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276 (11th Cir. 2008) (citing *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989)); *see also Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  Walmart concedes that Gilbert is a member of a protected class, and that (at least for purposes of summary judgment) Gilbert was subjected to an adverse employment decision and was qualified to do his job.  (Doc. #21 at 11 and n.6).  Therefore, the question for the court to resolve is whether Gilbert has proven, by a preponderance of the evidence, that Walmart treated similarly situated white employees more favorably than Gilbert himself.

A Title VII or § 1981 case does not turn on whether a defendant treated a plaintiff fairly.  If that were the key issue, this court would sit as a super-personnel director.  It is well-established that the federal courts should not serve as "super-personnel department[s] that reexamine[ ] an entity's business decisions." *Chapman,* 229 F.3d at 1030 (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)).  In *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th Cir. 1998), *modified in non-relevant part and reh'g denied*, 151 F.3d 1321 (1998), the Eleventh Circuit emphasized the necessity of showing that similarly situated employees outside the Plaintiff's protected class were treated more favorably: "It is this showing — and not the demonstration of racial animus alone — that addresses the fundamental issue in a Title VII disparate treatment case:

---

discipline more severe than that received by others similarly situated.  In *Sturniolo* and *Hinson*, unlike in the present case, there was no claim that a similarly situated employee had committed a similar violation of work rules, but had been treated more favorably than the plaintiffs.  Moreover, the Rule 56 evidence is clear and undisputed – despite Plaintiff's unsupported "understanding" otherwise, his duties were assumed by a member of the same protected class of individuals as himself. (Gilbert Dep. at 197-199).  *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003).

14

whether the defendant intentionally discriminated against the plaintiff." *Jones*, 137 F.3d at 1313 (citations omitted); *see also Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Employees are similarly situated when they are accused of the same or similar conduct. *See Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). The conduct must be nearly identical "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* (citations omitted) (holding that although two employees had arrests for assaulting a child, they were not similarly situated because one had three additional arrests for violent assaults); *see also Thomas v. Dep't of Corrections for State of Georgia*, Slip Copy, 2010 WL 1753315, No. 09-15501 at *6 (11th Cir. May 4, 2010).[11]   That is, it is necessary for the court to consider whether the employees are involved in or accused of the same or similar misconduct and are disciplined in different ways. *See Holifield*, 115 F.3d at 1562. The most important factors in the disciplinary context are "the nature of the offenses committed and the nature of the punishments imposed." *See Maniccia*, 171 F.3d at 1368. "The Eleventh Circuit requires 'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Vickers v. Federal Express Corp.*, 132 F.Supp.2d 1371, 1380 (S.D. Fla. 2000) (quoting *Maniccia*, 171 F.3d at 1368-69); *see also Wilson* 376 F.3d at 1091 (requiring the comparator's situation to be "nearly identical.")   If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of

---

[11] The court appreciates, as did the *Thomas* court, that *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1334 (11th Cir.2000) set out a less exacting burden. But *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 n. 2 (11th Cir.2006), made clear that the "nearly identical" standard of *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) – a panel decision that pre-dates the *Alexander* panel decision – applies under the prior precedent rule.

15

discrimination is present.  *See id.* (citing *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)); *Jones*, 137 F.3d at 1311 ("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case.").

### 1.    Potential Comparator Eric Olsen

Eric Olsen is a white male who, during the relevant time period, was an Overnight Support Manager at the Walmart store in Vestavia, store #4580.  (Gilbert Decl. at ¶¶ 6-7).  Gilbert and Olsen worked together approximately one night a week as co-managers.  (Gilbert Decl. at ¶ 7).  Gilbert was demoted for using a derogatory and profane racial slur about Olsen in front of subordinate associates, conduct which would violate Walmart's PD-19 Discrimination and Harassment Policy.  (Chandler Decl. at ¶¶ 3-6 and Exh. A to Chandler Decl.).  Gilbert "categorically den[ies] making any such remark."  (Gilbert Decl. at ¶ 8).

Gilbert contends that Olsen is a proper comparator – a white associate who violated Walmart's policies, but who was not demoted (or who, at a minimum, suffered less severe punishment than Gilbert).  (*See* Doc. #27 at 14).  In support of his contention, Gilbert maintains that Olsen violated Walmart's prohibition against using profanity and was not disciplined.[12]  (*See id.; see also* Gilbert Decl. at ¶ 11).  Specifically, Gilbert contends that two African American associates told Gilbert that Olsen "used profanity to them on the sales floor . . . Eric [Olsen] walked up to them and said, look, you guys – I've been watching you guys standing here bullshitting around for the last 30 minutes.  You need to get this shit done . . ."  (Gilbert Dep. at 111).  To Gilbert's knowledge, Olsen

---

[12] The attendance issue, mentioned briefly by Plaintiff in his brief, is a non-starter.  Gilbert was not demoted or subjected to any relevant discipline because of any attendance issues.

received no discipline with regard to his use of profanity.  (Gilbert Decl. at ¶ 13).  Walmart counters by pointing to undisputed Rule 56 evidence showing that an investigation was performed pursuant to the complaint about Olsen, but that no associates claimed to have ever heard it (and Gilbert admittedly did not hear it), and so the complaint was dismissed as unsubstantiated.  (Chandler Decl. at ¶ 17; *see also* Gilbert Dep. at 111).

For purposes of its summary judgment analysis, even if the court assumes that Olsen used profanity in the workplace, that assumption does not help Gilbert cut ice here.  First, Plaintiff has not created an issue of fact that suggests Walmart, after investigation of the Olsen incident, believed he actually made the remarks.  Moreover, to compare Olsen's use of the terms "bullshitting" and "shit" when addressing the *behavior* of associates is hardly comparable to Gilbert's use of the phrase "f***ing white boy," which is both profane and racially derogatory, in reference to Olsen himself.[13] The nature of these offenses is wholly different, not only in Walmart's view (*see* Exh. A to Chandler

---

[13] Once again, that Gilbert "categorically deni[es]" making the racially derogatory statement is of no import.  (Gilbert Decl. at ¶ 8).  The relevant inquiry is not whether Gilbert actually made the statement, but whether Walmart had a good faith belief that Gilbert actually made the statement.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 980 n. 2 (11th Cir. 1989), *cert. denied*, 495 U.S. 935 (1990) (That the employee did not in fact engage in misconduct reported to the employer is irrelevant to the question whether the employer believed the employee had done wrong.).  Federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Section 1981] does not interfere." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir. 1988) (citations omitted). *See also Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated § 1981.").

Decl.),[14] but as evidenced by case law.  *See Jones v. Bessemer Carraway Med. Cntr.*, 137 F.3d 1306, 1311 (11th Cir. 1998) ("The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed.") (internal quotations and citations omitted); *see also Thomas*, 2010 WL 1753315 at *7 (noting that plaintiff and his potential comparator were not similarly situated because, while they both falsified time sheets, there were material differences between their misconduct which subjected them to different liabilities); *Smith*, 356 Fed. Appx. at 279 (finding that racially discriminatory behavior is "fundamentally different" than possession of a firearm); *Hanford v. Geo Group, Inc.*, 345 Fed. Appx. 399, 403, n. 4 (11th Cir. 2009) (noting that the district court reasoned that each of the comparator employees identified by the plaintiff, including several who were disciplined short of demotion for use of profanity, were not similarly situated to plaintiff because none of them possessed plaintiff's unique characteristics of being a supervisor who used both racial slurs and profanity and then threatened to lie about it during investigations).  This court refuses to sit as a super-personnel department for the purpose of re-examining Walmart's policies which treat the offenses differently.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).  Thus, even assuming that Eric Olsen made the statements at issue, he simply is not a proper comparator for Gilbert.

---

[14] "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules, ..."  *Maniccia*, 171 F.3d at 1369 (citing *Jones*, 137 F.3d at 1311 (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)).  Walmart has demonstrated its honest belief that Olsen did not engage in misconduct comparable to that which it found Gilbert engaged.  *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311-1312 (11th Cir. 1998)(absent showing by plaintiff of pertinent similarities, plaintiff's claim that he was similarly situated to an alleged non-minority comparator was negated).

### 2.      Potential Comparator Carolyn Cecil

Carolyn Cecil is a white female who, during the relevant time period, was an Operations Manager at Walmart's Distribution Center facility in Cullman, Alabama.  (Cecil Dep. at 8, 32).  In a closed door managerial meeting, Cecil used the term "white trash" in reference to one of Walmart's drivers.  (Cecil Dep. at 23-24).   The driver was not present.  As a result of her behavior, Cecil was given a "step two" discipline pursuant to Walmart's PD-19 policy by Gery Fuller, which stayed on her discipline file for several months, and stays in her personnel file forever.  (Cecil Dep. at 29-32, 39).  Prior to the issuance of the discipline for the use of the term "white trash," Cecil did not have any disciplines in her file.  (Cecil Dep. at 29-30).

Although Fuller was involved in the investigations and decisions related to both the Gilbert and Cecil incidents, and both were managers, the similarities between the two incidents stop there.  Gilbert used a racial slur about a co-manager to his associates in the middle of the store, where the object of his scorn was present; Cecil used a racial slur about an associate during a closed door, managers only meeting – the object of her scorn was not present.  Gilbert had previous disciplines on his record; Cecil had none.  (Doc. #29 at 3, n. 3; *see also* Doc. #28, Exh. 4 at 00221).  Thus, not only is the "quality" of the infraction distinguishable, but the "quantity" is as well.  *See Burke-Fowler*, 447 F.3d at 1323, 1325 (noting differences in degree of conduct prevents comparator from being "nearly identical").  Carolyn Cecil is not a proper comparator for Gilbert.

Having failed to produce sufficient evidence to establish that the non-minority employees with whom he compares his treatment were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was demoted, Gilbert's prima facie case of disparate treatment fails.  However, the court recognizes that even where a plaintiff fails to show the

existence of a similarly situated employee, summary judgment is only appropriate where no other evidence of discrimination is present. *See Wilson*, 376 F.3d 1079, 1092 (11th Cir. 2004). Therefore, the court engages in the pretext analysis for purposes of thoroughness.

### C.     Walmart had Legitimate, Non-Discriminatory Reasons for Demoting Gilbert, and Gilbert has no Evidence to Support a Finding of Pretext

Even if Gilbert had successfully established a prima facie case of disparate treatment race discrimination (and to be clear, he has not), his claim would nevertheless fail because Walmart has successfully rebutted any inference of discrimination, and Gilbert cannot show that the articulated reason for the demotion was a pretext for discrimination. *See Holifield*, 115 F.3d at 1564-65. Walmart articulates that Gilbert was demoted because the company believed he used racially discriminatory and profane language against a co-manager, and at the time he made the comment, already had two disciplines on his file. Courts have consistently held violations of work rules to be legitimate, non-discriminatory reasons for adverse actions. *See Burdine*, 450 U.S. at 256; *see also Douglas v. DeKalb County, GA*, 308 Fed. Appx. 396, 400 (11th Cir. 2009); *Brillinger v. City of Lake Worth*, 317 Fed. Appx. 871, 877 (11th Cir. 2008). Therefore, Walmart has met its burden of articulation, the presumption of discrimination is destroyed, (assuming one had been created in the first place), and the burden shifts back to Gilbert to show by a preponderance of the evidence that discrimination motivated the decision to demote him. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000).

Pretext is established when a plaintiff "present[s] concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. *See Bryant v. Jones,* 575 F.3d 1281, 1308 (11th Cir. 2009). "[The plaintiff] may succeed in this either directly by persuading the

court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir.2005) (quotation marks omitted); *see also Vessels v. Atlanta Indep. Sch. Sys.,* 408 F.3d 763, 771 (11th Cir.2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."). When the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it...." *Chapman*, 229 F.3d at 1030. Conclusory allegations and assertions of discrimination are insufficient. *See Bryant,* 575 F.3d at 1308.

As evidence of pretext, Gilbert contends: (1) the investigation of his infraction was more in-depth than the investigation of Olsen's infraction; (2) there are no documents supporting the contention that Olsen's infraction was ever investigated; and (3) he did not actually use the racial slur. (*See* Doc. #27 at 10-12, 16-17). These arguments seem to be centered on the theory that Walmart's stated reasons for the demotion are unworthy of belief. *See Burdine*, 450 U.S. at 256.

Gilbert's pretext argument first falls short of the mark on consideration of the investigation into Olsen's purported use of the terms "bullshitting" and "shit." Gilbert argues, somewhat contradictorily, that pretext can be established by the lack of documentation supporting the investigation of the Olsen matter, but in the same breath argues that the Olsen investigation was not as in-depth as the Gilbert investigation. Whichever argument reigns, both are unsupported by the record. After the complaint against Olsen was brought to the attention of management, interviews of Olsen and several associates ensued in accordance with Walmart policy. (Chandler Decl. at ¶17; *see also* Exh. B. To Chandler Decl.). Gilbert himself admits that Walmart conducted the interviews.

21

(Gilbert Dep. at 112-113).   But not a single associate claimed to have heard Olsen use profanity in the workplace.   (Chandler Decl. at ¶ 17).   Gilbert was not informed of the outcome of the investigation because, as he himself admits, the complaint he passed on about Olsen was not his own. (Gilbert Dep. at 110-113).  Moreover, Gilbert cannot remember which member of management he gave the statements about Olsen's language to, nor has he produced documentation from the two complainants corroborating that Olsen cussed in their presence.  (Gilbert Dep. at 112).  As such, the investigation into the Olsen matter not only fails to show pretext, but highlights the legitimacy of Walmart's actions treating the incidents surrounding Olsen and Gilbert differently.

As to the final pretext argument, while Gilbert emphasizes his self-serving assertion that he did not utter the profane racial slur, he has presented no other evidence to support his innocence or, even more importantly, that Walmart believed he was innocent.  In order to show that the proffered reason for his demotion was pretextual, Plaintiff must show that Walmart based its decision to discipline Plaintiff on an unreasonable belief that he had made a racially profane statement.  *See, e.g., Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir.2001), *cert. denied,* 534 U.S. 976, 122 S.Ct. 402, 151 L.Ed.2d 305 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir.2000), *cert. denied,* 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Equal Employment Opportunity Comm'n v. Total Sys. Servs., Inc.*, 221 F.3d 1171 (11th Cir. 2000) (plaintiff could be properly discharged on defendant's good faith belief that she lied in an internal investigation); *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1339 (11th Cir.2000), *reh'g denied,* 218 F.3d 749 (11th Cir.2000) ("a plaintiff

22

must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (court's pretext inquiry is properly limited to whether the decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1501 (11th Cir.1985) (employer's belief, honest but mistaken, may nonetheless provide legitimate reason for discharge). Despite Plaintiff's conclusory assertion to the contrary, *see Thomas v. Miami Veterans Med. Cntr.*, 290 Fed. Appx. 317, 320 (11th Cir. Aug. 26, 2008) (conclusory allegations insufficient to support pretext); *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations, without more, are insufficient to show pretext), he has offered no evidence which contradicts the evidence before this court that Walmart demoted him because it believed that he had made the slur in question.

In the absence of such evidence, the court finds that Defendant is entitled to summary judgment on Plaintiff's claims. The legitimacy of Walmart's stated reason for demoting Gilbert is highlighted by a record replete with evidence that Walmart conducted a thorough investigation into the matter, complete with six different associates corroborating that Gilbert openly used the profane racial slur against his co-manager. (*See* Chandler Decl. at ¶¶ 8-9). *See Laosebikan v. Coca-Cola*, 167 Fed. Appx. 758, 764 (11th Cir. Jan. 31, 2006) (holding that plaintiff did not establish pretext in retaliation where the company said that it terminated plaintiff because of insubordination and had evidence of the insubordination); *see also Robinson v. LaFarge North America, Inc.*, 240 Fed. Appx. 824, 829 (11th Cir. June 19, 2007) (holding that where defendant employer had evidence that plaintiff deliberately caused damage to equipment, there was insufficient evidence of pretext);

*Thomas v. Miami Veterans Med. Cntr.*, 290 Fed. Appx. 317, 320 (11th Cir. Aug. 26, 2008) (where employer stated it fired plaintiff for failure to follow supervisory instructions, wilful resistance to the instructions, and disrespectful conduct, and the record indicated no evidence, as opposed to conclusory allegations, that the employer fired plaintiff for any reasons other than legitimate, nondiscriminatory reasons, retaliation claimed failed).  Walmart believed in good faith that Gilbert uttered the profane racial slur, and accordingly demoted Gilbert.  *See Holifield*, 115 F.3d at 1565 ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance.").  Whether Gilbert actually uttered the slur is not an issue for this court to referee.  *See Wilson v. B/E Aerospace*, 376 F.3d 1079, 1092 (11th Cir. 2004).  *Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 755 (11th Cir.2002) ("An employer articulates a legitimate nondiscriminatory reason for termination where the employer had an honest, good faith belief in the reason for termination, even if it turns out that the employer was mistaken in that belief."); *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir.2000) ("'Pretext is not demonstrated by showing simply that the employer was mistaken.'") (quoting *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir.1995)).  *Abel v. Dubberly*, 210 F.3d 1334, 1338-1339 (11th Cir. 2000) ("An employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation"); *see also Turner v. Texas Instruments*, *Inc.*, 555 F.2d 1251, 1256 (5th Cir. 1977) (Even if an employer wrongly believes that a plaintiff violated its policy, if the employer acted on its good faith belief it is not guilty of discrimination). A discrimination plaintiff cannot establish pretext by simply asserting that his employer was mistaken.  *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991 (noting that courts do not second guess an employer's business judgment and that plaintiff cannot establish pretext

merely by demonstrating that a reported work rule violation did not occur).  That is all Plaintiff has done here.

Gilbert has not created a genuine issue of material fact as to whether Walmart's articulated reason for the demotion was pretextual.  *See Chapman*, 229 F.3d at 1024-25.  For this separate and additional reason, Walmart's motion for summary judgment is due to be granted.

**V.**      **Conclusion**

For the reasons asserted above, there being no dispute as to any material fact, Defendant Walmart Stores, Inc.'s Motion (Doc. #20) for Summary Judgment is due to be granted.

A separate order will be entered dismissing all claims.

**DONE** and **ORDERED** this _____30th_____ day of July, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE